NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HATTIE HILL,**<br><br>        Plaintiff,<br><br>v.<br><br>**JO ANNE B. BARNHART,**<br>**COMMISSIONER OF SOCIAL**<br>**SECURITY,**<br><br>        Defendant. | Civil Action No. 04-cv-3533 (PGS)<br><br>**OPINION** |

**SHERIDAN, U.S.D.J.**

      This matter comes before the Court pursuant to section 405(g) of the Social Security Act (Act) as amended, 42 U.S.C. 405(g). Plaintiff, Hattie Hill ("plaintiff" or "Hill") seeks a review of the final decision of the Commissioner of Social Security Administration ("SSA") denying her claim for disability insurance benefits under the Act.

      Plaintiff filed for Disability Insurance Benefits on July 22, 2000 alleging disability since January 1, 1998 due to diabetes, hypertension, arthritis, high cholesterol, esophageal reflux and ulcers. In its Initial Disability Determination dated September 5, 2001, the SSA denied plaintiff's request for a determination of disability. The disability determination indicated a primary diagnosis of chronic joint pain, and a secondary diagnosis of hypertension. It found that:

      \*      You do have pain. However, it does not limit your ability to move about and use your limbs;

    \*        Your blood pressure has been high in the past. However, it is being controlled with treatment.

    \*        You have diabetes. However, it has not damaged any vital body organs, and it is not causing any problems which would prevent you from working.

    \*        The evidence shows no other condition which significantly limits your ability to work.

On October 15, 2001, plaintiff filed a Request for Reconsideration. She stated, "I still am very ill. Besides all the sickness I have I can't hardly use my hands. I can't work in this condition. I have carpel tunnel." She referenced Jersey City Family Health Center (Clinic) as the facility she used to treat her blood pressure, diabetes and hypertension, and Jersey City Medical Center as the facility where she received physical therapy for arthritis in her neck, hand conditions and shoulders. She listed her prescription medications as Prevacid, Furosemide, Premarin, Captapril and Glucatra. Her non-prescription medications were Aleve (four times per day) and Extra Strength Tylenol (once per day).

Upon reconsideration, the SSA again denied her claim on July 9, 2002. A request for a hearing before an administrative law judge was filed on August 29, 2002 and a hearing was held on October 28, 2003. Plaintiff was represented by Patricia Franklin, Esq. On January 13, 2004, Michal L. Lissek, ALJ, issued her decision that plaintiff was not disabled and was therefore not eligible for Disability Insurance Benefits under Section (216)(i) and 223 of the Social Security Act. The appeals council denied plaintiff's request for review of the ALJ's decision. This instant action was commenced on July 27, 2004.


## I.

Hattie Hill was born on June 3, 1945. At the time of the hearing she was 58 years old. She is a high school graduate. Her past employment includes a full-time job at United Health Care System in Newark from 1986 - 1997 doing computer data input. She also reports work as a radiology clerk, social services secretary, and warehouse clerk.

In support of her application, plaintiff completed an Adult Disability Report, an Activities and Daily Living questionnaire, and Pain Reports. On the Adult Disability Report, plaintiff indicated that her diabetes, hypertension and arthritis limited her ability to work because she was tired and in pain. On the Pain Report dated July 25, 2000, plaintiff complained of pain "in both knees, right shoulder, neck and arms, ankles and hands." She described the pain as aching, crushing, stabbing and stinging. She stated that the pain lasted "sometimes all day and sometimes off and on," and that "this pain continuously hurts very bad." She stated that "sometimes extra strength tylenol arthritis pain" medication makes the pain better, and also that "I take arthritis tylenol pain reliever, but I still hurt."

On another Pain Report dated November 29, 2001, plaintiff complained that her primary pain is in the "back of neck and shoulders". She described the pain as "burning, crushing, and stabbing" and that she "constantly" has this pain. "This pain lasts all day. Even with therapy and medication I still experience this pain." "This pain is so bad that my hand gets lock up and when it gets like that I cannot even pick or lift anything at all. Everything drops from my hands." When asked what makes the pain worse, she responded, "I have three (3) dislocated discs in my neck that's why I experience this pains constantly." "Nothing seems to help even with the therapy and medication I still experience this pain. Nothing seems to help me. Maybe because of the dislocated discs". (R. 68).

She listed her secondary pain as "hands (carpal tunnel), and that the pain lasts 15 - 20 minutes". (R. 70). "Since I suffer from carpal tunnel, the pain is very strong and I lose strength in my hands and I can't carry or lift anything at all." "Nothing seems to help but I take injections and extra strength tylenol also heating pads. But even with that as soon as I pick up or carry anything I have pain." (R. 70). Plaintiff also complained of pain in both knees which she attributed to arthritis. "Since I suffer from arthritis I have this pain constantly" "This pains are so bad that I cannot hardly walk. Sometimes I can't even do my housework." "Nothing seems to help. I can't take too many medications because I suffer from ulcers." (R. 72).

The Court reviewed extensive medical records and reports found in the administrative record;[1] and the expert and physician's reports. On Aug. 9, 2001, plaintiff was examined by Michael Pollack, MD, on behalf of the New Jersey Department of Labor as part of her initial application for disability. Dr. Pollack's two page report regarding the physical examination of plaintiff was unremarkable except for a few findings. He found that she had severe pain on right lateral rotation and right lateral flexion of the cervical spine; and that there was a right heberden's node of the right fifth finger. There was mild effusion of the left second PIP joint with marked overlying squeeze tenderness in both joints. Dr. Pollack found that plaintiff's gait, reflexes, coordination, and sensation were normal. Lateral rotation of plaintiff's cervical spine was reduced, but her neck range of motion was otherwise normal. She could make a fist and her grip strength was four out of five. Her knees

---

[1] See, Rider A. There are some documents in the Record which are not listed in the Rider because they are illegible. Notwithstanding same, the documents detailed yield a comprehensive overview of Petitioner's medical history. In addition, only the instruction page of a document entitled "Physical Residual Functional Capacity Assessment" was found within the Record (p. 156). Since neither party refers to this document in their briefs, the Court assumes it is not significant.

had normal range of motion with no effusion, erythema or crepitus. Plaintiff had full range of motion of her lumbar spine and all other joints. She was taking Cyclobenzaprine and Tylenol #3 for pain, Captopril and Lasix for hypertension and insulin for diabetes. His diagnosis of plaintiff was: 1) chronic neck, bilateral hand and bilateral knee pain; rule out degenerative joint disease; 2) diabetes; and 3) hypertension. His prognosis for plaintiff was "fair". (R. 85). An ECG and chest x-ray from this same date were both normal.

On August 29, 2001, Doctor R. Carducci of the New Jersey Department of Labor, Division of Disability Services reviewed plaintiff's medical file and found her condition was "not severe."

On June 24, 2002, plaintiff was again examined by Dr. Pollack on behalf of the New Jersey Department of Labor. Plaintiff reiterated her complaints of pain. His diagnosis was the same as the August, 2001 diagnosis. Dr. Pollack noted that plaintiff's hypertension and diabetes had not required emergency room visits or hospitalizations during the past two years. Plaintiff had limited lateral rotation of her neck, with normal range of motion of her lumbosacral spine. Plaintiff had full range of motion of her joints and no deformity of her joints. She had grip strength of four out of five and could make a fist bilaterally. The neurological examination was normal. Plaintiff had normal sensation, coordination, gait, and a normal motor examination.

Finally, on July 5, 2002, B. Levine, MD of the New Jersey Department of Labor, Division of Disability Services reviewed plaintiff's medical file and recommended that it be closed since her condition was "not severe."

II.

The Court carefully reviewed the October 28, 2003 transcript of the hearing before the Hon. Michal L. Lissek. Plaintiff was represented by Patricia Franklin, Esq. Dr. Martin Fetchner, a medical expert, was also present.

At the hearing, many of the facts previously mentioned were re-established. Plaintiff was 58 years old at the time of the hearing, and had graduated from high school. Her past relevant work experience includes being a PC specialist who worked with computers. Plaintiff maintained at the hearing that she is unable to perform her prior work because of pain and because her fingers lock up. With regard to pain, plaintiff testified that she experiences pain when she sits too long. The pain in her neck and back is unbearable and sometimes unrelenting. In addition to pain, her knees "pop" and walking causes shortness of breath and heart palpitations. She can no longer lift much and even a shoulder bag is a burden. She testified that she endures migraine headaches daily, is unable to do her household chores and that she only does light grocery shopping. She takes Tylenol PM to relieve her pain at night and help her to sleep. Sometimes her medications cause side effects such as diarrhea and "charley horses".

In sharp contrast to plaintiff's testimony, Dr. Martin Fetchner, an internist, testified at the hearing as a medical expert who reviewed the medical file. Dr. Fetchner did not examine the plaintiff. The doctor questioned plaintiff whether she had been in physical therapy. She indicated that she had undergone physical therapy twice, each for a six week period at Jersey City Medical Center for her neck (there are no records to substantiate same). Based on his review and analysis of plaintiff's records, Dr. Fletcher concluded that plaintiff had the following conditions that were demonstratable by medically acceptable, clinical and laboratory techniques: (1) high blood pressure,

6

controlled with medication; (2) high cholesterol (treated with Zocor); (3) diabetes (controlled with medication); (4) some esophageal reflux (treated with Prevacid); (5) some exogenous obesity; (6) although she has aches and pains in her joints, there has been no x-ray finding of arthritis, no swelling or joint deformity; and (7) cervical neck problems (some mild arthritis).  In his opinion, plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any listed impairment in Appendix 1, Subpart P, Regulation No. 4.  (R. 233).  His testimony concluded with his recommendation that plaintiff be limited to sedentary work, where she could lift 10 pounds occasionally, and sit six hours in an eight hour day "with the usual standing up and sitting down that anyone else would have."

On cross-examination, Dr. Fletcher testified that he did not see any objective evidence in the record that would cause plaintiff to have dizziness and "locking-up" of neck and hands.  As to plaintiff's diabetes, Dr. Fletcher opined that, based on the medical findings in the record, plaintiff's diabetes "is fairly well under control" and that her headaches are "subjective."  (R. at 236).  He thought that plaintiff's headaches could be caused by high blood pressure.  Plaintiff's attorney continued to insist that her client could not sit for six hours, but the Judge explained that the medical expert makes his determinations based what he gleans in the medical records.

III.

Judge Lissek issued her decision in this matter on January 13, 2004.  She ruled that plaintiff was not under a "disability" as defined in the Social Security Act, and that her impairments did not prevent her from performing her past relevant work. (Decision of Hon. Michal Lissek dated 1/13/04). More specifically, Judge Lissek found:

1. The claimant meets the nondisability requirements for a period of disability and disability insurance set forth in section 216(I) of the Social Security Act and was insured through the last date insured, December 12, 2002.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of "disability".

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §404.1520(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §404.1527).

7. The claimant has the residual functioning capacity for "sedentary work."

8. The claimant's past relevant work as secretary and computer data clerk did not require the performance of work-related activity precluded by her residual functional capacity (20 CFR §404.1565).

9. The claimant's impairments do not prevent the claimant from performing her past relevant work.

10. The claimant has not been under a "disability", as defined in the Social Security Act, as amended, at anytime through the date of the decision (20 CFR §404.1520(e)).

IV.

This Court may review the Commissioner's final decision to determine whether it is supported by substantial evidence in the record. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The factual findings of the Commissioner may be reviewed only to determine whether the administrative record contains substantial evidence to support her findings. 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999);

*Hartranft*, 181 F.3d at 360. Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)(omitting internal quotation marks and citation); *Plummer*, 186 F.3d at 427 (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (omitting internal quotation marks and citation)). Where substantial evidence in the record supports the Commissioner's findings, the reviewing court must uphold her decision "even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 35 (3d Cir. 2001); 42 U.S.C. § 405(g). The substantial evidence standard allows a court to review an ALJ's decision, yet avoid interference with the administrative responsibilities of the Commissioner. See, *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). "[T]he substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." *Schaudeck v. Commissioner*, 181 F.3d 429, 431 (3d Cir. 1999) (citing *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)). Thus, the Court's sole inquiry is whether the record as a whole yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner. Additionally, where evidence is susceptible of more than one rational interpretation, the Court must uphold the Commissioner's decision. *Monsour Medical Center*, 806 F.2d at 1190-91.

In order to determine whether the claimant is disabled, the five-step evaluation must be performed by the ALJ pursuant to 20 CFR §404.1520. In this case, ALJ Lissek found plaintiff did not meet step three of the evaluation. That is, plaintiff did not suffer from a listed impairment or its equivalent to preclude any gainful employment. 20 CFR §404.1520(d). As a result, the ALJ was required to perform the step four analysis. Step four requires the administrative law judge to consider

whether the claimant retains the residual functional capacity to perform her past relevant work (20 CFR §404.1520(d)).   The claimant bears the burden of establishing that he or she is incapable of performing his or her past relevant work due to a physical or mental impairment. *See*, *Kent v. Schweker*, 710 F.2d 110, 114 (3d Cir. 1983).   The ALJ found that claimant's impairments did not prevent her from performing her past relevant work as a computer data clerk, radiology clerk and warehouse clerk.

V.

Plaintiff argues that the ALJ erred for four reasons. First, plaintiff argues that there is a lack of substantial evidence to support ALJ Lissek's decision because the decision does not comport with the requirements of *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000). *Burnett* requires sufficient development of the record and explanation of findings to permit meaningful review.  However, this does not require the ALJ to use particular language or adhere to a particular format.  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The findings here are sufficient.

There is substantial evidence upon which the ALJ's decision stands.  Dr. Fetchner found that plaintiff's high blood pressure and cholesterol were controlled by medication.  More importantly, Dr. Fetchner noted her aches and pains were subjective in nature.  "There's never been any x-ray findings . . .  of arthritis and certainly no swelling, joint deformity." (R. 234).  He noted that Dr. Pollack on two occasions and found "basically normal musculoskeletal exam."  He conceded that claimant has some "mild" arthritis in her neck.  On cross-examination, Dr. Fetchner indicated there was "no objective evidence" that plaintiff's hands locked "whatever [that term] means".  In addition, he found nothing to support a finding of blurry vision.  Dr. Fetchner opined that plaintiff's vision

was not related to diabetes because it "is under good control." He stated her headaches could be caused by high blood pressure, but there is no objective evidence to substantiate same.

As the plaintiff conceded "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis. Rather, the function of *Burnett* is sufficient development of the record, and an explanation of findings to permit meaningful review." *Tie'ease L. Jones v. Commissioner of Social Security*, 364 F. 3d 501, 505 (2004). ALJ Lissek's reliance on Dr. Fetchner and other physicians is ample support for her conclusions. The record and the decision meet the *Burnett* requirement.

Secondly, the plaintiff contends that the ALJ "failed to elicit testimony from the medical expert to determine whether Ms. Hill's obesity in combination with other impairments would meet or equal a listing." However, the burden of proof at step three and four is upon the plaintiff to prove her impairment matches a listing or is equal in severity to a listed impairment. Although the physicians noted plaintiff's weight, there is no evidence that obesity was a substantial factor in this case. It was not raised by plaintiff and it was not a substantial consideration of the physicians who reviewed her case. The plaintiff was free to cross-examine Dr. Fetchner on this point. A review of the record shows that plaintiff failed to question Dr. Fetchner about it. For the above reasons, Plaintiff's argument with regard to obesity fails.

Thirdly, plaintiff argues that the ALJ's decision is flawed because she failed to properly evaluate Ms. Hill's complaints of pain. ALJ Lissek did consider plaintiff's pain. ALJ Lissek noted that "nothing helped her with the pain." and that "claimant described neck pain, back pain, bilateral knee pain . . . and head pain". The ALJ considered "all symptoms including pain" in determining residual functioning capacity. A fair reading of the decision is that ALJ Lissek found that despite

11

some pain, plaintiff could perform sedentary work. More specifically, plaintiff contends that pursuant to regulation. 20 CFR §404.1529. ALJ Lissek failed to adequately evaluate plaintiff's symptoms and pain. The regulation requires that symptoms supported by objective medical findings be given weight. However, the regulation acknowledges that symptoms "sometimes suggest a greater severity of impairment than can be shown by objective evidence." Some factors to be considered when evaluating pain include routine activities, frequency and duration of pain, medications and side effects, treatment for relief of pain and other measures to relieve pain. ALJ Lissek questioned plaintiff about her daily activities. She testified that she is able to do light shopping, feed, bath and dress herself, and make meals for herself and her husband. (R. 229-230). She testified that she uses over the counter medication for pain (Aleve and Tylenol PM). In addition, Dr. Fetchner also considered some of these factors in his testimony. He found plaintiff's diabetes, high cholesterol, high blood pressure and reflux disease were controlled by medication. There was no objective finding of arthritis. Dr. Fetchner specifically asked plaintiff whether she had physical therapy. The plaintiff responded that she had two separate sessions of six weeks for her neck.

Considering plaintiff's testimony as well as the testimony of Dr. Fetchner and the findings of Dr. Pollack, the requirements for evaluating pain in 20 CFR §404.1529 were adequately considered by Judge Lissek. ALJ Lissek did not discount plaintiff's pain, but found despite some pain, she could perform sedentary work. The intent and spirit of the regulation regarding pain was met.

Lastly, plaintiff attacks ALJ Lissek's finding that plaintiff's complaints were "not totally credible." The Commissioner has discretion to evaluate the credibility of the plaintiff's complaints. *Jenkins v. Commissioner*, 2006 U.S. App. Lexis 21295 (3d Cir. 2006). The credibility of witnesses

is quintessentially the province of the trier of fact.  *See*, *generally*, *Scully v. U.S. Wats, Inc.,* 238 F. 3d 497 (3d Cir. 2001).  As noted earlier, Doctors Pollack, Fetchner, Carducci and Levine all found her symptoms to be "not severe."  The physicians' findings in contrast to plaintiff's testimony support ALJ Lissek's opinion that plaintiff "was not totally credible."

<div style="text-align:center">Conclusion</div>

Based on the above, there is substantial evidence to support the findings of the Administrative Law Judge.   This Court affirms the final determination of the Commissioner of Social Security.  The appeal is dismissed.

March 2, 2007                                                          S/ *Peter G. Sheridan*
                                                                                     PETER G. SHERIDAN, U.S.D.J.

RIDER A

**LIST OF RELEVANT RECORDS REVIEWED BY THE COURT**

6/16/00   Admission at Jersey City Medical Center. Primary diagnosis was acute gastric ulcer without hemorrhage or perforation.  The secondary diagnosis was   1) atrophic gastritis; 2) essential hypertension; 3) diabetes mellitus; 4) personal history of specified diseases; 5) diverticulosis of colon; 6) dental caries; and 7) diaphragmatic hernia. R. 173-176.

7/5/00   Jersey City Family Health Center ("Clinic")  Sharp pain right side of head, face, scull and radiating down to right side of neck for 3 weeks.  Plaintiff claimed that the pain had developed slowly until June 14, 2000 when it became intolerable and Patient  went to ER and received pain medication. She stated that the next day she was seen by her dentist and prescribed Clindamycin and had a severe anaphylic reaction and seizures. She was admitted to the hospital for 5 days. Positive for multiple ulcers, and rheumatoid arthritis (R. 101).

7/12/00   Clinic:   Doctor notes re: ulcers, migraines, pain right side of head; Tylenol use

8/9/00   Clinic:  Visit for dizziness, migraines and abdominal pain

1/5/01   Clinic: There was no indication of why patient was at the clinic (R.77).

3/2/01   Clinic: Plaintiff visits clinic for dizziness (R. 98)

6/16/01   Emergency Room Report: Cornial abrasion (R. 78)

8/2/01   Diagnostic Radiology, Jersey City Medical Center

Right Shoulder: normal Study

Cervical Spine: "There is minimal anterior osteophyte formation at C5- C6." No fracture or subluxation"

Chest PA and Lateral Views: Normal Chest (R. 109)

8/14/01   Laboratory blood test results showing high cholesterol and glucose (R. 108).

8/28/01   Clinic:  Diabetes education on use of glucose monitor (R. 97)

| | |
|---|---|
| 9/4/01 | Clinic:  Consultation Request by Dr. Irving suggesting trial of Vioxx or Celebrex for pain for C5-C6, C6-C7 degenerative disc and right cervical radioculpathy. (R. 106). |
| 9/4/01 | Rehabilitation Services Referral by Dr. Irving (cervical disc degeneration and cervical myelathy)  (R. 107). |
| 9/11/01 | Clinic:  Diabetes education (R. 97) |
| 9/20/01 | EGD Procedure Report of Paul Weissman, MD.  Medium Hiatel Hernia; Evidence of erosive gastritis (R. 104-105). |
| 9/25/01 | Clinic: Missed follow up appointment.  (R. 96) |
| 10/16/01: | Clinic:  Follow up visit. "feels well; BP high today; has herniated disc cervical spine and (illegible); NSAID - even Vioxx; extra strength pain 6 tabs (R. 95). Note to follow up on December 4, 2001. |
| 12/4/01 | Clinic: Notes about diabetes education (R. 96, 97)<br>Notes about weight, BP; patient "feels well otherwise" |
| 12/4/01 | Jersey City Medical Center: Consultation Request.<br>56 year old  cervical radioculpathy C5-C6 degenerative disc disorder<br>Evaluate for pain management (R. 102) Note on chart: wrong date, patient scheduled for 12/13 |
| 12/16/01 | Clinic: Plaintiff there for a "cold" Notes indicate: High blood pressure, "has herniated disc cervical spine and radiculapathy", "has arthritis", "advise on NSAID - even Vioxx"; advise extra strength (illegible) 6 tabs." |
| 12/24/01 | Clinic:  Blood pressure was high. Husband just hospitalized for cardiac arrest. (R. 189) |
| 1/4/02 | Jersey City Medical Center:  Consultation request for multiple dental extractions. (R. 186-187). |
| 5/29/02 | Jersey City Medical Center Lab Test: ( R. 157- 161)<br>Laboratory blood tests indicating high cholesterol and glucose<br>All other tests normal |
| 6/5/02 | Clinic: Routine follow up visit.  Blister on toe, headaches, off and on dizziness. (R.156) |
| 6/19/02 | Clinic: Routine follow up visit. (R. 155). |
| 7/01/02 | Radiology image report indicating cyst in left kidney.  (R. 152) |

15

| | |
|---|---|
| 8/7/02 | Clinic: Plaintiff has the flu. (R. 155) |
| 10/28/02 | Clinic: Appointment for headache and back pain. (R. 153) |
| 11/18/02 | Clinic: Plaintiff had appointment for follow up on headaches and right shoulder discomfort; complained of chest discomfort; EMS called and responded. (R. 183). At hospital, abnormal EKG (R. 154). |
| 11/18/02 | Primary diagnosis for hospital admission was Intermediate Coronary Syndrome (unstable angina). The Secondary Diagnosis was 1) essential hypertension, unspecified; 2) Diabetes Mellitus without complication, type 2, (non-insulin dependant); 3) pure hypercholesterolemia; 4) esophageal reflux; and 5) unspecified gastritis and gastroduodenitis. (R. 165). Plaintiff was stabilized and discharged on 11/26/02. (R. 164 - 171). |
| 11/20/02 | Coagulation Study.<br>Urinalyses: Normal<br>Laboratory blood test results: high cholesterol, high glucose, other levels normal |
| 12/12/02 | Clinic: Plaintiff received antibiotics for cold symptoms. |
| 12/24/02 | Clinic: Routine follow up visit. Patient left. |
| 12/27/02 | Emergency Room for heart attack |
| 1/14/03 | Lynne J. Aclerno of the Clinic submitted a letter in response to a subpoena sent by the SSA. Dr. Aclerno stated that Plaintiff was scheduled to be seen for a follow up of her hospitalization for chest discomfort. Plaintiff was to be catherized, but she did not go through with it since she is allergic to the dye used in the procedure. "At this time it is not possible to determine patient's ability to work." "This office does not do work evaluations" (R. 135). |
| 01/16/03 | Clinic. Plaintiff was seen for a cardiac evaluation. The test came back as a "negative study". (R.137-138). Clinic notes from same day indicate same. "Plaintiff denies chest pain as bad as before, but mild CP on going upstairs" (R 180). |
| 10/16/03 | Clinic: fatigue, tiredness, sees "dots" from eyes; scheduled opthomology appt. |
| 12/24/03 | Clinic: Plaintiff left before examined. (R. 139) |